Marie STROJEK by Caroline MILLS, Her Legal Guardian, Plaintiff–Appellant/Cross–Appellee,

v.

HARDIN COUNTY BOARD OF SUPERVISORS, Defendant–Appellee/Cross–Appellant.

No. 98–1183.

Court of Appeals of Iowa.

Sept. 29, 1999.

Douglas Cook of Brekken, Deppe, Wynia, Cook & Hyland, P.C., Jewell, for appellant.

Richard N. Dunn, County Attorney, and Brian L. Wirt of Davis, Brown, Koehn, Shors & Roberts, P.C., Des Moines, for appellee.

Considered by STREIT, P.J., and MAHAN and ZIMMER, JJ.

STREIT, P.J.

A Hardin County resident appeals her disqualification from county assistance because of a trust set up by her father before his death. Marie Strojek, through her legal guardian, appeals a ruling by the Hardin County Board of Supervisors that she is no longer eligible for county funding to pay for mental health services because the trust assets should be taken into consideration when determining eligibility. We affirm the district court's ruling permitting the consideration of the trust as-

sets when determining eligibility for basic living expenses.

### I. Background Facts & Procedure.

Marie Strojek, a mentally handicapped sixty-three-year old, has been a resident of Opportunity Village in Clear Lake, Iowa, since February 1981. Hardin County pays approximately $21,900 per year for Strojek's care at the Village. A portion of this money is used to pay for Strojek's participation at a work-activity center.

Strojek is the beneficiary of a testamentary trust established by her late father. After Strojek's mother died, her estate was divided equally between Strojek and her sister, Caroline Mills. Mills was appointed Strojek's trustee. The applicable trust provision provided:

> My trustee *shall,* from time to time, pay to or apply for the benefit of my daughter, Marie Helen Strojek, such sums from the income and principal as my trustee in the exercise of her *sole discretion* deems necessary or advisable, to provide for her proper care, support, maintenance and education. (Emphasis added.)

The trust assets included approximately $70,000 in C.D.s and bank accounts and an undivided one-half interest in a 200–acre farm. In an effort to assist the County with the costs of Strojek's care, Mills each year donated $10,000 from the trust to the County.

On July 1, 1996, the County enacted the Hardin County Mental Health Services Plan. The plan contained income and resource eligibility criteria that had to be satisfied before residents were eligible for county-sponsored benefits. In April 1997, the County informed Mills, the trustee, that Strojek no longer qualified for county assistance because her trust assets were in excess of the eligibility minimums.

Strojek filed an appeal to the Hardin County Board of Supervisors. The Board affirmed the decision, prompting Strojek to seek judicial review in district court.

Without objection from either party, the district court reclassified the petition as one for writ of certiorari. The district court ruled the assets of Strojek's trust could be used to determine her eligibility for county funding, because the trust was not truly discretionary, but rather a trust for Strojek's support with a spendthrift provision. Strojek has appealed, and the County has cross-appealed.

### II. Standard of Review.

■ A writ of certiorari is to be granted where an inferior board, "exercising judicial functions, is alleged to have exceeded proper jurisdiction or otherwise acted illegally." Iowa R.Civ.P. 306. Illegality exists if the board applied an incorrect rule of law. *Petersen v. Harrison County Bd. of Supervisors,* 580 N.W.2d 790, 793 (Iowa 1998). Our review of a judgment entered by a district court in a certiorari proceeding "is for correction of errors at law, not de novo." *Fisher v. Chickasaw County,* 553 N.W.2d 331, 333 (Iowa 1996).

### III. The Language of the Trust Is Equivocal.

■ When the terms of a trust attempt to provide for the care or education of a beneficiary, courts traditionally attempted to qualify the instrument either as a support trust or a discretionary trust. The terms of a support trust require the trustee to pay or apply so much of the trust's income or principal as necessary for the beneficiary's care or education. *See* Austin Wakeman Scott, *Abridgment of the Law of Trusts* § 154 (1960) [hereinafter Scott's *Abridgment*]. Language such as "the trustee shall pay for the beneficiary's care, education, or support" is normally indicative of a support trust in that the trustee's power to apply the trust assets is limited. *Smith v. Smith,* 246 Neb. 193, 517 N.W.2d 394, 398 (1994); *see Bureau of Support v. Kreitzer,* 16 Ohio St.2d 147, 243 N.E.2d 83, 85 (1968). If considered a support trust, "the interest of the beneficiary can be reached in satisfaction of an en-

forceable claim ... for necessary services rendered to the beneficiary." *In re Dodge*, 281 N.W.2d 447, 450 (Iowa 1979) (quoting Restatement (Second) of Trusts § 157(b) (1959)).

The terms of a discretionary trust grant the trustee complete and unfettered discretion in determining if any of the trust's income or principal should be distributed to the beneficiary. *See* Scott's *Abridgment* § 155. If considered a true discretionary trust, a "creditor of the beneficiary cannot compel the trustee to pay any part of the income or principal." Restatement (Second) of Trusts § 155(1) (1959).

The definitional distinctions between support and discretionary trusts are limpid. Provisions of particular trusts muddy these clear demarcations. When the provision is equivocal or adheres to principles common to both types of trusts, interpretative inconsistencies abound. *Compare Dodge*, 281 N.W.2d at 450 (ruling a trust provision stating, "Each shall have the right to disburse any portion of the principal for the care and maintenance of the ... beneficiary ...." a support trust), *and Button v. Elmhurst Nat'l Bank*, 169 Ill. App.3d 28, 119 Ill.Dec. 509, 522 N.E.2d 1368, 1379 (1988) (ruling a trust provision stating, "[T]he trustee shall use ... and apply so much of the income or principal ... as the Trustee deems necessary ... for the medical care, support, education and welfare of either child." a support trust."), *with Roorda v. Roorda*, 230 Iowa 1103, 300 N.W. 294, 295 (1941) (ruling a trust provision stating, "[T]he trustee shall hold the trust property and shall pay over to the beneficiary the income and any part or all of the principal at such time or times as in the judgment of the trustee the payment of same will be to the best interests of the beneficiary." a discretionary trust), *andMyers v. Kansas Dep't of Soc. & Rehab. Servs.*, 254 Kan. 467, 866 P.2d 1052, 1059 (1994) (ruling a trust provision stating, "[M]y trustee shall hold, manage, invest and reinvest, collect the income there from [and] pay over so much [of] the net income and principal ... as my trustee deems advisable for his care, support, maintenance, emergencies and welfare." a discretionary trust), *and* Restatement (Second) of Trusts § 155(1) (1959) (finding the provision, "[T]he trustee shall pay to or apply for a beneficiary so much of the income and principal ... as the trustee in his uncontrolled discretion shall see fit to pay or apply." a discretionary trust).

The parties in the present case ask this court to wade into these murky waters without even a life jacket. Each side throws out, as an aid for interpretation, only the specific language of the trust provision that supports their particular contention despite the remaining language to the contrary. Marie Strojek argues that the language of her trust grants the trustee, Mills, "sole discretion" in making distributions from the trust's assets, while ignoring the limitations placed on that discretion. The County, in turn, argues that the word "shall" in the trust language is mandatory, while ignoring the discretionary language. The equivocal nature of the provision is obvious. It blends a desire to ensure the basic support needs of a handicapped daughter with the control mechanism of trustee discretion designed to prevent wasteful depletion of the trust's assets. Any attempt by this court to hammer the language of this particular trust provision into one of these rigid categories would only breed further inconsistencies in the law.

### IV. The Discretionary Support Trust: A Viable Alternative.

The state of Nebraska remedied the inherent inconsistencies of forcing equivocal trust provisions into traditional categories by creating a third category, a discretionary support trust, which addresses the equivocal provision in its entirety and best contemplates the intent of the settlor.[1]

---

**1.** The trust provisions in *Sullivan* and *Smith* virtually mimic the present provision. The *Sullivan* provision states,

*See In re Sullivan's Will,* 144 Neb. 36, 12 N.W.2d 148 (1943); *Smith,* 517 N.W.2d at 394.

A discretionary support trust is created when the settlor combines explicit discretionary language "with language that, in itself, would be deemed to create a pure support trust." Evelyn Ginsberg Abravanel, *Discretionary Support Trusts,* 68 Iowa L.Rev. 273, 279 n. 26 (1983) [hereinafter Abravanel]. The effect of a discretionary support trust is to establish the minimal distributions a trustee must make in order to comport with the settlor's intent of providing basic support, while retaining broad discretionary powers in the trustee. *Id.* at 290; *see Sullivan,* 12 N.W.2d at 150; 3 Austin Wakeman Scott & William Franklin Fratcher, *The Law of Trusts* § 187, at 15 (4th ed.1988) [hereinafter Scott & Fratcher] ("[I]f [a trustee] is directed to pay as much of the income and principal as is necessary for the support of a beneficiary, he can be compelled to pay at least the minimum amount which in the opinion of a reasonable man would be necessary."); *see also Kreitzer,* 16 Ohio St.2d at 150–52, 243 N.E.2d at 85–87 (reaching the same conclusion but forcing a third party creditor to seek subrogation from the trust). The rationale behind minimal support lies in the trustee's fiduciary duties to the beneficiary. Restatement (Third) of Trusts: Prudent Investor Rule § 187 cmt. d-f (1992). If a trustee abuses her discretion and violates her fiduciary duties, the beneficiary, through judicial action, may compel disbursements from the trust for minimal support. Scott & Fratcher, § 187, at 14–15. "Accordingly, the beneficiary's interest in the trust should be reachable by an attaching credi-

[The trustees] shall apply the proceeds or income therefrom for the proper use, support and maintenance of said son ... from time to time as in their judgment may be required or necessary therefor, they being the sole judges of such necessity without applying to the courts [and] shall have full and uncontrolled discretion as to the application of said income and trust estate.

*Sullivan,* 12 N.W.2d at 149. The *Smith* provision states,

tor to the same extent." Abravanel, 68 Iowa L.Rev. at 290; *see* Lawrence A. Frolik, *Discretionary Trusts for a Disabled Beneficiary: A Solution or a Trap for the Unwary?,* 46 U. Pitt.L.Rev. 335, 342 (1985) ("[T]he trustee can be required to distribute sufficient income to the beneficiary to provide at least a minimum level of support ... even if it would displace government benefits."). *But see Lang v. Commonwealth,* 515 Pa. 428, 528 A.2d 1335, 1345 (1987) (supporting the theory of discretionary support trusts, but ruling a trustee may seek public funding before the trustee must intercede). Thus, only the portion of the trust's assets necessary for the core needs of the beneficiary may be attached by third party creditors.

## V. A Discretionary Support Trust Remedies the Equivocal Nature of the Trust Provision and Comports with the Intent of the Settlor.

The characterization of the Strojek trust as a discretionary support trust best remedies the paradoxical nature of the language. A discretionary support trust harmonizes the seemingly inconsistent terms of the trust. The discretionary language grants Mills wide latitude in determining Strojek's core needs, thus protecting the trust from wasteful depletion; while ensuring, by way of mandatory language coupled with support standards, that Strojek will never be left destitute. More importantly, however, the identification of this trust as a discretionary support trust best contemplates the intent of the settlor.

In interpreting wills and testamentary trusts, we are guided by well-

[T]he Trustee shall pay over to, or for the benefit of, any one or more of the living members of a class composed of my son ... and his issue so much of the net income and principal of the trust as the Trustee shall deem to be in the best interest of each such person.

*Smith,* 517 N.W.2d at 396–97.

settled principles. First, the intent of the testator is the polestar and must prevail. *In re Estate of Rogers*, 473 N.W.2d 36, 39 (Iowa 1991). Second, the testator's intent must be derived from (1) the four corners of the will, (2) the scheme for distribution, and (3) "the surrounding circumstances at the time of the will's execution." *Id.*

First, as discussed above, the four corners of the will indicate a discretionary support trust, because it resolves textual ambiguities and gives effect to each provision in its entirety. Second, the scheme of distribution suggests the creation of a hybrid trust. Under Article IV(b)(2) of the Strojek Will, Mills, the trustee, will receive the remaining assets of the trust upon her sister's death. If the trust was considered a pure discretionary trust, the trustee could completely withhold any disbursements from the trust in order to maximize the money received by her upon the beneficiary's death. We do not hint that Mills is acting upon such motivations, but it explains the settlor's use of mandatory language in crafting the provision. Mandatory language as well as defining the intended use of the trust's assets would eliminate potential abuse on the part of the trustee. Third, Strojek was born mentally handicapped and lived with her parents until she was forty-one. At the time Mr. Strojek drafted the will, Strojek's long-term needs were readily apparent. The settlor knew his daughter could not support herself or provide for her basic necessities. The settlor established the trust to prevent his impaired daughter from becoming destitute. Thus, the intent of the settlor, as gleaned from the enumerated factors, was to create a discretionary support trust.

## VI. *Conclusion.*

The recognition of discretionary support trusts in Iowa is the next logical step in the maturation of this state's trust law. It resolves ambiguity and provides settlors a hybrid tool to effectuate their intent. Furthermore, the trust in the present case falls squarely within the definition of a discretionary support trust. It combines discretionary language with language indicative of a support trust. Assets necessary for Strojek's basic needs could be reached by Strojek or the County. Therefore, trust assets could be considered when determining eligibility for Strojek's living expenses.

The district court reached the appropriate conclusions of law, but achieved them by massaging the definition of a support trust. The finding of a discretionary support trust better supports the district court's conclusions. The evidence on record does not provide sufficient evidence for this court to determine the precise amount necessary for Strojek's care. The case is remanded for further evidentiary hearings as to these costs.

The district court's conclusions are affirmed, its rationale modified, and the case remanded for further proceedings.

**AFFIRMED AND REMANDED.**